Ned H. Bassen
Kathryn A. Coleman
Christine M. Fitzgerald
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
bassen@hugheshubbard.com
kcoleman@hugheshubbard.com
fitzgera@hugheshubbard.com
gartman@hugheshubbard.com

Attorneys for Defendants
Stephen DiCarmine and Joel I. Sanders

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L. LONDELL MCMILLAN, <br><br> Plaintiff, <br><br> v. <br><br> BARCLAYS BANK PLC, STEVEN H. DAVIS, STEPHEN DICARMINE, JOEL I. SANDERS, FRANCIS J. CANELLAS, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 13-CV-1095 (ALC)(DF) |

**REPLY OF DEFENDANTS STEPHEN DICARMINE AND JOEL I. SANDERS TO PLAINTIFF'S MEMORANDUM OF LAW REGARDING JURISDICTION**

    Defendants Stephen DiCarmine and Joel I. Sanders, by their undersigned counsel, hereby reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions Regarding Subject Matter Jurisdiction and Discretionary Abstention ("Pl.'s Mem.").

ARGUMENT

I.  **PLAINTIFF'S OPPOSITION MEMORANDUM SHOWS THAT THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST MESSRS. DICARMINE AND SANDERS**

As discussed in the May 28, 2013 Statement of Messrs. DiCarmine and Sanders Regarding Jurisdiction (ECF Doc. 24) (the "May 28 Statement"), where a complaint's allegations that form the basis for jurisdiction are "immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" a court may dismiss the case for lack of jurisdiction. Bell v. Hood, 327 U.S. 678, 682-83 (1946). Plaintiff's Opposition Memorandum shows that this pertains here because its statements/arguments are immaterial to the issue presented, *viz*., whether this court should dismiss or abstain for jurisdictional reasons. Further, as discussed below, Plaintiff's Opposition Memorandum is based on misrepresentations to this Court showing that Plaintiff's claims here against Messrs. DiCarmine and Sanders are wholly insubstantial and frivolous. The bottom line is that Plaintiff took out a loan from Barclays to fund his capital contribution to the now defunct law firm Dewey & LeBoeuf LLP (the "Dewey law firm"). In an effort to skirt his obligation to repay the loan, Plaintiff has made all sorts of wild allegations against Messrs. DiCarmine and Sanders regarding his capital contribution. Assuming *arguendo* their truth (even though they are palpably false), Plaintiff owes Barclays the money. What Plaintiff is trying to do here would be akin to a homeowner refusing to pay a mortgage because he/she has issues with the house.

II.  **PLAINTIFF'S MISREPRESENTATIONS SHOW THAT PLAINTIFF'S CLAIM IS WHOLLY INSUBSTANTIAL AND FRIVOLOUS**

Plaintiff's Memorandum of Law is replete with misrepresentations. These misrepresentations confirm that this Court should decline to exercise jurisdiction over the claims

against Messrs. DiCarmine and Sanders because Plaintiff's claims against them are wholly insubstantial and frivolous, having been brought solely for the purpose of manufacturing jurisdiction.[1]

**MISREPRESENTATION NO. 1:** "[I]t is undisputed that [Messrs. DiCarmine and Sanders] delivered the Loan Agreement to Barclays without Plaintiff's consent." (Pl.'s Mem. at 9.)

**FACT:** Messrs. DiCarmine and Sanders indeed dispute this and Plaintiff is well aware that it is not undisputed. By letter dated April 11, 2013, counsel for Messrs. DiCarmine and Sanders advised Plaintiff's counsel that the claims asserted in this lawsuit against Messrs. DiCarmine and Sanders are not warranted by existing law and the lawsuit's factual contentions do not have evidentiary support. (See Affirmation of Ned H. Bassen ("Bassen Aff."), dated July 12, 2013, Ex. A.)

**MISREPRESENTATION NO. 2:** "[I]t is undisputed that [Messrs. DiCarmine and Sanders] knew, but failed to advise Plaintiff, that an 'Event of Default' existed under the Loan Agreement the moment it was purportedly executed." (Pl.'s Mem. at 9.)

**FACT:** The above-referenced April 11, 2013 letter also advised Plaintiff that there was no such "Event of Default" at the time Plaintiff's Barclays Letter Agreement was executed, or at any time, given that i) at the time the Letter Agreement was executed by Plaintiff Dewey had received $150,000,000 from its April 2010 bond offering; ii) Dewey never failed to

---

[1] By letter dated April 19, 2013, Messrs. DiCarmine and Sanders requested permission to move for dismissal and sanctions and asked that their anticipated motions be addressed at the court conference scheduled for April 26, 2013. At the conference, the Court asked the parties to brief the issue of the Court's jurisdiction over this case prior to any motion practice. Pursuant to Fed. R. Civ. P. 11(c)(3), the Court may "[o]n its own… order an attorney, law firm, or party to show cause why conduct… has not violated Rule 11(b)." Messrs. DiCarmine and Sanders submit that it would be appropriate for the Court to initiate Rule 11 proceedings in light of the substantial misrepresentations contained in Plaintiff's Memorandum of Law which clearly violate Rule 11(b)(3)'s requirement that "the factual contentions [presented to the Court] have evidentiary support." In the alternative, Messrs. DiCarmine and Sanders renew their request for permission to serve Plaintiff with a motion for sanctions in accordance with Rule 11(c)(2).

make its bank and vendor payments; and iii) there could been no default related to monies due by Dewey to partners as such monies did not constitute debt. (Bassen Aff. at Ex. A.)

**MISREPRESENTATION NO. 3:** "[W]ithout Plaintiff's authorization, certain Individual Defendants delivered to Barclays a document purporting to contain Plaintiff's signature (the 'Loan Agreement') whereby Barclays agreed to advance $540,000 to Dewey to "assist' Plaintiff with a 'partnership capital subscription' (which was not owed.)." (Pl.'s Mem. at 1.)

**FACT:** Plaintiff owed Dewey $540,000 (the amount of his capital contribution) and, indeed, Plaintiff even expressly acknowledged this fact. (See Bassen Aff. Ex. B (March 13, 2008 Memorandum from the Executive Committee[2] to Plaintiff noting that Plaintiff's unpaid capital balance was $540,000), Ex. C (March 27, 2008 email from Plaintiff to Mr. Sanders, "I am well aware of my obligation here and I would like to discuss other loan sources…."), Ex. D (June 24, 2010 email from Mr. Sanders to Plaintiff, "The note is to fund the capital that you owe the firm."), Ex. E (in response to a March 12, 2010 email from Mr. Sanders informing Plaintiff that he had not received any pay because he owed capital to the firm and had not signed the requisite capital loan forms Plaintiff responded, by email, "I will sign the loan document.")

**FACT:** Plaintiff signed the requisite documents in order to receive the capital loan from Barclays. (See Bassen Aff. Exs. D, G (June 24, 2010 emails between Plaintiff and Mr. Sanders: i) Plaintiff stated at 1:37 p.m. that he "signed the loan documents months ago"; ii) Mr. Sanders responded at 2:28 p.m. that Plaintiff had "signed the loan application but…did not sign the loan note."; iii) Mr. Sanders noted at 3:24 p.m. that Plaintiff had "done everything possible to

---

[2] Plaintiff's Amended Complaint alleges that this Memorandum was dated March 6, 2008 and was from Mr. "Sanders and the rest of Dewey & LeBoeuf's Executive Committee." (Am. Compl. ¶ 18.) In fact, the Memorandum was dated March 13, 2008 and was from just the Executive Committee. (Bassen Aff. Ex. B.) Mr. Sanders was not a member of the Executive Committee. (Bassen Aff. Ex. F.)

avoid signing this note…Unfortunately, this note has now expired.  We will receive another note from Barclays on Monday."; iv) Plaintiff responded at 9:16 p.m. that "…[he] had no knowledge [he] was required to sign anything else until today" and at 9:13 p.m. conceded that he "may not have even opened [the] email" sent to him in April which contained the original note.); Ex. A to the May 28 Statement (June 30, 2010 email from Plaintiff to Mr. Sanders referencing the new note delivered, "It was signed today when brought to me.").

**MISREPRESENTATION NO. 4:**  "It is undisputed that Plaintiff did not sign a promissory note in connection with the Loan Agreement."  (Pl.'s Mem. at 1, fn. 1.)

**FACT:**  As discussed above, Plaintiff signed the note and acknowledged that he did so.  (See Ex. A to the May 28 Statement; Bassen Aff. Exs. D, G.)

**MISREPRESENTATION NO. 5:**  "In June 2010, Dewey confirmed in writing that Plaintiff would not be required to make a capital contribution to the firm."  (Pl.'s Mem. at 1.)

**FACT:**  As demonstrated by the above-referenced emails, Plaintiff was required to make a capital contribution to the firm and neither Mr. DiCarmine nor Sanders confirmed or said otherwise in writing.  (See Ex. A to the May 28 Statement; Bassen Aff. Exs. B, C, D.)

**MISREPRESENTATION NO. 6**: Messrs. DiCarmine and Sanders engaged in frivolous conduct by falsely representing to this Court that "neither Mr. DiCarmine nor Mr. Sanders was an officer or director of Dewey at any time…." (Pl.'s Mem, at 10)

**FACT:**  Messrs. DiCarmine and Sanders were the Executive Director and Chief Financial Officer, respectively, of the Dewey law firm.  The mere fact that their titles contained the words "officer" or "director" does not mean that Messrs. DiCarmine and Sanders were officers and directors within the meaning of the law.  E.g., In re: Borders Group, Inc., 453 B.R. 459, 469 (Bankr. SDNY 2011) (noting that when considering whether an individual is an officer

or director within the meaning of 11 U.S.C. § 503(c)(1), "[a]n individual's title, by itself, is insufficient to establish that an individual is a director or officer."). In all events, Messrs. DiCarmine and Sanders were employees of a limited liability partnership, and as such did not have the fiduciary duties required of officers and directors of corporations as Plaintiff alleges in his Amended Complaint. See, e.g., Vital Sparing Found, Inc. v. Worth Am. CJlobex Fund, L.P.,2013 NY Slip Op 30223(U), 25, (N.Y.Sup. Ct. Jan, 31, 2013); Hynes v. Sbarro, Inc., 2011 NY Slip Op 31S5U, *9-10 (Sup. Ct., Suffolk County, 2011).

### III. SHOULD THIS COURT DECIDE TO EXERCISE JURISDICTION, PLAINTIFF HAS CONCEDED THAT HIS CLAIMS AGAINST MESSRS. DICARMINE AND SANDERS SHOULD BE REFERRED TO THE SDNY BANKRUPTCY COURT

The Amended Standing Order of Reference issued by Chief Judge Preska on January 31, 2012 requires that "[p]ursuant to 28 U.S.C. 157(a) any or all cases … related to a case under title 11[bankruptcy] are referred to the bankruptcy judges for this district." Plaintiff has conceded that his claims against Messrs. DiCarmine and Sanders are related to the Dewey Bankruptcy (Pl.'s Mem. at 3-6). The Dewey Bankruptcy is a case under title 11. Accordingly, and for the reasons stated in the May 28 Statement, should this Court decide to exercise jurisdiction, this Court should refer the claims against Messrs. DiCarmine and Sanders to the SDNY Bankruptcy Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and for the reasons set forth in the May 28 Statement, Messrs. DiCarmine and Sanders respectfully request that the Court enter an Order (i) (A) dismissing the action for lack of jurisdiction or (B) referring the action to the SDNY Bankruptcy Court with respect to Messrs. DiCarmine and Sanders; and (ii) granting them such other and further relief as is just and proper.

Dated: New York, New York
       July 12, 2013

HUGHES HUBBARD & REED LLP

By:   /s/ *Ned H. Bassen*
      Ned H. Bassen
      Kathryn A. Coleman
      Christine M. Fitzgerald
      Christopher Gartman
      One Battery Park Plaza
      New York, New York 10004
      (212) 837-6000
      bassen@hugheshubbard.com
      kcoleman@hugheshubbard.com
      fitzgera@hugheshubbard.com
      gartman@hugheshubbard.com

      Attorneys for Defendants
      Stephen DiCarmine and Joel I. Sanders