UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L. LONDELL MCMILLAN,

                *Plaintiff*,

    v.

BARCLAYS BANK PLC, STEPHEN H. DAVIS,
STEPHEN DICARMINE, JOEL I. SANDERS,
FRANCIS J. CANELLAS, *et al.*

                *Defendants*.

No. 13-CV-1095 (ALC) (DF)


**BARCLAYS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS THE AMENDED COMPLAINT FOR
LACK OF SUBJECT MATTER JURISDICTION
OR, IN THE ALTERNATIVE, UNDER DISCRETIONARY ABSENTION**

**PRELIMINARY STATEMENT**

Plaintiff L. Londell McMillan filed this case to put off as long as possible repaying money that he borrowed. After Barclays brought a straightforward contract suit against McMillan in London to collect $540,000 it loaned him to fund his partnership account at the Dewey & LeBoeuf firm—as the Loan Agreement expressly contemplated—McMillan filed a retaliatory lawsuit in this Court. When Barclays sought to stay that counterstrike in favor of the prior-filed English Proceeding, McMillan filed an Amended Complaint adding claims against former Dewey personnel in a transparent effort to ensnarl Barclays' collection efforts in a procedural thicket that would ultimately require the busy Dewey bankruptcy judge to resolve matters of state and English contract law having little, if anything, to do with Dewey's bankruptcy.

At a hearing today in the prior-filed English Proceeding, the English court expressed displeasure at McMillan for trying to delay the English Proceeding and altogether avoid the English court's jurisdiction. This Court need not and should not reward McMillan's gamesmanship. McMillan destroyed diversity jurisdiction when he added claims against non-diverse individuals. He now asserts bankruptcy jurisdiction, but this Court has ample discretion to abstain from exercising such jurisdiction and should do so. Barclays' opening brief cited many cases in which courts abstained where, as here, numerous factors weighed strongly in favor of abstention. McMillan does not discuss, much less distinguish, any of them. In the interests of justice and comity, this case should be dismissed.

Since Barclays filed its initial brief, two developments in the case have underscored why this Court should decline to exercise jurisdiction in favor of the prior-filed English Proceeding. First, in the English Proceeding, McMillan has now withdrawn both his objection to the English court's jurisdiction and his *forum non conveniens* claim. In doing so, McMillan has conceded

1

that England is an appropriate forum to litigate Barclays' claims. And the English court has likewise made clear its displeasure with McMillan's litigation strategy in the English Proceeding. Second, in response to a Rule 11 letter from Barclays, McMillan has agreed to withdraw his frivolous allegations that the Loan Agreement is a "fabrication," and one that he did not sign. His remaining allegations are equally baseless, but in any event, can all be asserted as defenses in the prior-filed English Proceeding.

According to McMillan, he "simply wants his claims and defenses heard in one forum." (Opp. at 2.) They can be—in England, the contractually contemplated forum. As explained in the attached affidavit of Dr. Alex Mills, Lecturer in Law at University College London, McMillan can have his day in court in England. McMillan can take discovery, including discovery from the Individual Defendants and other US-based entities, in that case. He can even add the Individual Defendants to that case if it is "necessary or proper" to do so.

In short, neither this Court nor the bankruptcy court should be burdened with overseeing duplicative litigation just to afford McMillan further delay. This Court should dismiss this case for lack of jurisdiction or abstain in favor of the English Proceeding.

## ARGUMENT

**I.  RECENT FACTUAL DEVELOPMENTS FURTHER SUPPORT BARCLAYS' ARGUMENT THAT DISCRETIONARY ABSENTION IS WARRANTED.**

In its opening memorandum, Barclays explained why this Court should exercise its unreviewable discretion to abstain from exercising jurisdiction over this case in the interests of "justice" and "comity." 28 U.S.C. § 1334(c)(1). Barclays' demonstrated that *seven* relevant factors support discretionary abstention, consistent with recent precedent. Since Barclays filed its brief, two factual developments have further reinforced Barclays' position that abstention is warranted under the relevant factors.

### A. McMillan has withdrawn both his objection to the English court's jurisdiction and his *forum non conveniens* claim.

On July 9, 2013, McMillan accepted the English court's jurisdiction, informing the English court that he was withdrawing his application in support of dismissing that case on the grounds of lack of jurisdiction and *forum non conveniens*. Decl. of Andrew Lyon, ¶ 5, dated July 12, 2013. At today's hearing in the English Proceeding, the judge ordered McMillan's application dismissed and ordered McMillan to file a "Defence" by July 26, 2013. *Id.* McMillan's concession that England is an appropriate forum to litigate Barclays' claims now paves the way for that litigation to proceed.

Further, the English judge considered the grounds for McMillan's application to be misconceived and found McMillan's conduct unreasonable. *Id.* The English judge further stated that McMillan's behavior was characterized by delay and procrastination.[1] *Id.* The English judge's frustration with McMillan's delay tactics bears directly on this Court's consideration of issues of "comity," a central driver of discretionary abstention. The developments in England also bear on both the third and fourth factors of the discretionary abstention analysis—the existence of a pending proceeding and forum shopping—which are further discussed below.

### B. McMillan has withdrawn his allegation that the Loan Agreement was a "fabrication," as well as all allegations that suggest that the signature on the Loan Agreement is not his.

In the Amended Complaint, McMillan alleged that the Loan Agreement "is a fabrication," and in several places he alleged that the document "purported" to contain his signature. Am. Compl. ¶¶ 35, 36, 88 and 91. McMillan's allegations that the Loan Agreement was a "fabrication" and did not contain his signature were patently absurd from the outset, since the document bears his distinctive signature in three places and is witnessed. The absurdity of

---

[1] A transcript of today's proceedings in England, along with the English court's order, will be provided to this Court when they become available.

3

the allegations was further revealed by an email that defendants DiCarmine and Sanders attached to their motion to dismiss. Dkt. 24-1. The email is dated June 30, 2010—the same day that McMillan executed the Loan Agreement—and has the subject heading "Barclays Loan Agreement." In it, McMillan succinctly states, "It was signed today when brought over to me."

When confronted with this evidence, McMillan dissembled, contending in his opposition brief that the Loan Agreement referenced in the June 30, 2010 email may not be the same Loan Agreement that bears the very date of the email chain. (Opp. at 9.) On July 3, 2013, Barclays notified McMillan's counsel that it would seek Rule 11 sanctions if McMillan did not withdraw frivolous allegations that were demonstrably disproved by the documentary record. Suppl. Decl. of Gary R. Studen, Ex. 1, dated July 12, 2013. In response, McMillan agreed to withdraw the allegation that the Loan Agreement is a "fabrication," as well as the allegations that the document "purports" to reflect his signature. Suppl. Studen Decl., Ex. 2.

McMillan's belated withdrawal of these allegations underscores that this lawsuit was baseless from the beginning and was filed solely to delay, much like his litigation strategy in the English Proceeding. It also underscores that discretionary abstention is warranted. Neither this Court nor the bankruptcy court should be required to waste their time and resources just because McMillan wants to play games.

His remaining claims against Barclays—lack of consideration, mutual mistake, fraud, and a claim regarding the date on which his loan is due and payable under the Loan Agreement—are equally baseless for the reasons set forth in Barclays' April 2, 2013 pre-motion conference letter to this Court (*see* Suppl. Studen Decl., Ex. 3) and (if meritorious) would present, in any event, defenses to enforcement of the contract that can and should be heard by the English court. His allegations against the Individual Defendants appear likewise to be frivolous. But even if they

are proven to be true, they would only create a contingent right to indemnity from the individuals and can, if necessary, be pursued either in a separate action against the individuals or in the context of the English Proceeding.

## II. THIS COURT SHOULD DECLINE TO HEAR THIS CASE UNDER DISCRETIONARY ABSTENTION.

In its opening brief, Barclays cited a wealth of precedent demonstrating that discretionary abstention is warranted should this Court conclude that it has subject matter jurisdiction under 28 U.S.C. § 1334 over any claim in this case. *See Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11-CV-1927, 2012 WL 967582, at *6-7 (S.D.N.Y. Mar. 13, 2012); *In re FairPoint Commc'ns, Inc.*, 462 B.R. 75, 85-88 (S.D.N.Y. 2012); *In re CPW Acquisition Corp.*, No. 08-CV-14623, 2011 WL 830556, at *6-7 (S.D.N.Y. Mar. 3, 2011); *Langston Law Firm v. Mississippi*, 410 B.R. 150, 156-57 (S.D.N.Y. 2008); *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04-CV-708-710, 2004 WL 1048239, at *4-6 (S.D.N.Y. May 7, 2004). McMillan addresses *not one* of these cases in his opposition brief. The cases he does cite are either irrelevant or support Barclays' position. As an analysis of the discretionary abstention factors makes clear, abstention in favor of the English Proceeding is warranted.

*First*, Barclays showed that it would not be efficient for the bankruptcy court to devote time and energy to resolving a tangential dispute that is procedurally still in its infancy, and whose impact on the estate, if any, will be insignificant. Whether abstention would affect the efficient administration of the estate is "one of the more important factors to consider." *Allstate*, 2012 WL 967582, at *6. Yet, McMillan offers *no* substantive response to Barclays' arguments. He claims only that the Individual Defendants' use of insurance proceeds to fund their defense will negatively affect the Dewey estate. He does not, however, dispute that it would be inefficient for the bankruptcy court to have to resolve his non-core claim against Barclays, and

5

that it is not uncommon for such claims to be adjudicated in another forum. He does not refute Barclays' claim that his liability under the Loan Agreement represents less than half of one percent of the total dollar amount of unsecured nonpriority claims lodged against the Dewey estate and that recovery on such claims is expected to be about 14 cents on the dollar. Finally, McMillan fails to address *Kerusa*, in which Judge Lynch recognized that claims against an estate in liquidation, as opposed to reorganization, are ripe for resolution in a non-federal forum because the claims need to be reduced to a money judgment *before* the estate can be impacted. *Kerusa*, 2004 WL 1048239, at *4.

McMillan's argument is devoid of legal support and insufficient to rebut a finding that this factor supports an exercise of discretionary abstention.

***Second***, McMillan claims that "state law issues do not predominate over the federal issues" in this case (Opp. at 12), but he identifies no federal law issue. That is because *there are none*. The issues in this case arise exclusively under state law and foreign law.

Oddly, in support of his argument that state law issues do not predominate in this case, McMillan relies on three cases that, unlike this case, involved application of federal bankruptcy law. *See In re Waterscape Resort LLC*, No. 11-CV-11593, 2013 WL 819748, at *3 (S.D.N.Y. Mar. 5, 2013) (finding that bankruptcy law applied to resolve an objection to a proof of claim filed against the debtor in the debtor's bankruptcy proceeding); *In re Margulies*, 476 B.R. 393, 402 (S.D.N.Y. 2012) (concluding that a state law issue of coverage under an automobile insurance policy "coincides with the issue of dischargeability under federal bankruptcy law . . . and because of this interrelatedness, there is no feasible way to sever the coverage claim from the dischargeability claim"); *Hart v. Bello*, No. 11-CV-67, 2011 WL 1584577, at *5

6

(S.D.N.Y. Apr. 27, 2011) (noting that there are "significant bankruptcy questions" and that "Defendants' claims will be litigated under the Bankruptcy Code").

The predominance of state and foreign law issues in this case, and the absence of any bankruptcy and federal law issues, supports abstention.  *See Allstate*, 2012 WL 967582, at *7.

***Third***, the existence of the first-filed English Proceeding supports abstention.  This factor ultimately turns on whether there exists a pending proceeding in which McMillan's claims could be properly litigated.  *See CPW*, 2011 WL 830556, at *7 (determining that there exists "an adequate remedy under English law in an English forum").  McMillan has withdrawn his objection to the English court's exercise of jurisdiction, as well as his *forum non conveniens* claim, and that litigation is proceeding to the merits.  Thus, this factor supports abstention.

Citing *In re Bozel S.A.*, 434 B.R. 86 (S.D.N.Y. 2012), McMillan first contends that the mere existence of an alternative forum is "insufficient cause" for a court to exercise permissive abstention.  *Bozel*, however, merely stands for the proposition that this factor alone is an insufficient basis to abstain if other factors do not also weigh in favor of abstention.  Notably, in *Bozel*, the first factor (regarding impact on the efficient administration of the estate) "weigh[ed] heavily in favor of *not* exercising abstention."  *Bozel*, 434 B.R. at *104 (emphasis added).  Here, the converse is true, and indeed many factors weigh in favor of abstention.

McMillan further contends that it is not uncommon for U.S. courts to apply foreign law.  That may be true, but it does not follow that applying English law is easy to do.  *See, e.g.*, *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 299-301(2d Cir. 2013) (reversing jury verdict where district court provided erroneous jury instruction as to fraud claim asserted under English law).  Here, abstention would result in an English court applying English law, which is plainly the preferable and sensible result.

McMillan also contends, as an equitable matter, that he should not be compelled to fight a "two front war."  This contention is without merit because McMillan, and not Barclays, opened up the second front by initiating this lawsuit.  As shown in the discussion of the next factor (regarding forum shopping), McMillan did not need to open up this second front because the same rights and remedies are available to him in the English Proceeding.

Finally, McMillan questions whether the Loan Agreement at issue here is in fact similar to the loan agreements at issue in other lawsuits Barclays filed in England against other former Dewey partners who have similarly defaulted.  As reflected in the Declaration attached, Barclays' English counsel confirms that this is the case.  Lyon Decl., ¶¶ 2-4.

***Fourth***, McMillan's transparent forum shopping favors abstention.  Barclays—an English bank—commenced the first-filed English Proceeding against McMillan.  Barclays had every right to file suit in England as expressly contemplated in the Loan Agreement.  Given McMillan's withdrawal of his challenge to the English court's jurisdiction and acknowledgment that he did, in fact, sign the Loan Agreement, he can no longer question the validity of the English Proceeding or the fact that the English court is a convenient forum.

There is equally no question that McMillan engaged in forum shopping by filing this retaliatory action.  He is plainly attempting to manufacture bankruptcy jurisdiction (by asserting frivolous claims against the Individual Defendants) so that he can seek a stay of the first-filed English Proceeding.  Although Dewey's liquidation plan has been confirmed, it will be years before the bankruptcy court has concluded winding down the estate's complex financial affairs.  Adding Barclays' claim against McMillan to the bankruptcy court's agenda will delay Barclays' ability to collect for no good reason.  McMillan's procedural gamesmanship strongly supports

8

discretionary abstention, particularly where, as here, the English court has expressed its displeasure over McMillan's efforts to avoid its jurisdiction.

Finally, McMillan's claim that he commenced this action because it was the only way to join all necessary parties in a single lawsuit is unsupported and erroneous. As demonstrated by the attached Declaration of Dr. Alex Mills, McMillan can assert as defenses to the English Proceeding the various factual allegations he makes in this litigation, and take appropriate discovery in aid of those claims. Decl. of Alex Mills, ¶¶ 24-27, dated July 12, 2013. McMillan also would be able to join the Individual Defendants and assert claims against them in the English Proceeding, particularly if discovery reveals that the Individual Defendants would be liable to McMillan for having engaged in misconduct in connection with the Loan Agreement that provides for English jurisdiction and an application of English law. *Id.* at ¶¶ 16-23.

***Fifth***, the claims between McMillan and Barclays—the claims at the heart of this litigation—have no relation to the Dewey bankruptcy. McMillan asserts that there is a connection between his claims against some of the Individual Defendants and the Dewey bankruptcy. That connection is remote. But there is no connection—remote or otherwise—between his claims against Barclays and the Dewey bankruptcy.

***Sixth***, that the sole asserted basis for original jurisdiction over the claims in this case is under § 1334 weighs in favor of discretionary abstention. McMillan does not argue otherwise.

***Seventh***, that there are *no* "core" bankruptcy issues—none—in the central dispute between McMillan and Barclays militates in favor of this Court exercising discretionary abstention. *See In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 266 (S.D.N.Y. 2012) ("[T]hese state-law causes of action involve non-core proceedings and are indisputably private rights."). McMillan asserts that his claims against certain of the Individual Defendants are "core

9

proceedings," but he cites no authority for the proposition that such claims render his claims *against Barclays* "core" claims.[2]

### III.  THERE IS NO "RELATED TO" JURISDICTION UNDER 28 U.S.C. § 1334 OVER THE CLAIMS AGAINST BARCLAYS.

In its opening brief, Barclays showed why McMillan's claims against Barclays (Counts One through Five) are not "related to" the Dewey Bankruptcy. (Memo. at 12-14).  Barclays explained, accurately, that these claims have only two potential outcomes, neither of which could impact the estate.  If McMillan prevails on his claims against Barclays, he has no liability (since the requested relief on these claims is that the "Letter Agreement" be rescinded or declared null and void). Dkt. 7 at 16-17.  If he loses on these claims, any liability would be *personal* to McMillan. (Memo. at 13).  In response, McMillan contends that that he "can simultaneously prevail against both Barclays . . . and the Individual Defendants (on claims seeking damages)." (Opp. at 5.)  Jurisdiction, however, entails a claim-by-claim by analysis. *Okocha v. Disman*, No. 11-cv-1854, 2012 WL 6860892, at *5 (S.D.N.Y. Oct. 1, 2012).  And the Amended Complaint does not state any claim in which McMillan could prevail against Barclays and simultaneously prevail against the Individual Defendants for damages.  Barclays is a named defendant only with respect to Counts One through Five, and the relief sought on these claims does not include damages against Individual Defendants.

### CONCLUSION

For the foregoing reasons, Barclays respectfully requests that this Court dismiss the Amended Complaint for lack of subject matter jurisdiction or, in the alternative, abstain.

---

[2] Whether a claim is "core" or "non-core" would be relevant to this Court's consideration as to whether to refer the matter to the bankruptcy court. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  Per this Court's instruction, however, Barclays deferred briefing the issue of referral pending resolution of the threshold issue of jurisdiction.  (Memo. at 4 n.2.)

Dated: July 12, 2013
New York, New York

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

/s/ Andrew Z. Michaelson
Andrew Z. Michaelson
Gary R. Studen
575 Lexington Avenue, 7th Floor,
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Jonathan M. Shaw
5301 Wisconsin Ave., NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

*Attorneys for Barclays Bank PLC*

11