UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
L. LONDELL MCMILLAN,

                               Plaintiff,

        -against-

BARCLAYS BANK PLC, et al.,

                              Defendants.
------------------------------------------------------------x

1:13-cv-01095 (ALC)(DF)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff L. Londell McMillan ("Plaintiff") has brought this suit against Barclays Bank PLC ("Barclays") for declaratory judgment and recission of their contract, and against Steven H. Davis, Stephen Dicarmine, Joel I. Sanders, and Francis J. Canellas ("Individual Defendants") (collectively, "Defendants") for breach of a fiduciary duty, fraud, and negligent misrepresentation. According to Plaintiff, this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1334 because the issues that the Court will confront here "arise in" or are "related to" the ongoing bankruptcy court proceedings for Dewey & LeBoeuf ("Dewey"), the now defunct law firm. Defendants dispute Plaintiff's asserted basis of jurisdiction and have moved to dismiss the Complaint for lack of subject matter jurisdiction. (ECF Nos. 45-47, 49-50). The Court has considered all relevant submissions, including the parties' letters submitted in August and December 2013. For the reasons discussed below, Defendants' Motions to Dismiss (ECF Nos. 45-47, 49-50) are GRANTED.

**I.    Background**

      Plaintiff was a partner at Dewey. (Am. Compl. ¶¶ 14-15, ECF No. 7). The Individual Defendants were directors and officers of Dewey. (Am. Compl. ¶¶ 4-7, ECF No. 7). Upon

becoming a partner at the firm, Plaintiff was required to make a capital contribution of $540,000 to the operating capital of the firm. (Am. Compl. ¶ 16, ECF No. 7).

In March 2010, Barclays received a loan application for $540,000, signed by Plaintiff. (Studen Decl. Ex. 1, May 28, 2013, ECF No. 28). Three months later, Barclays informed Plaintiff via letter that his loan application had been approved, and included the terms of the loan for Plaintiff's review. (Studen Decl. Ex. 2, May 28, 2013, ECF No. 28). The terms detailed matters such as the purpose of the loan, Plantiff's designated agent, events of default that may trigger full repayment of the loan, and governing law. (Id.). Plaintiff's signature appears twice at the bottom of the letter, once in the presence of a witness, evidencing Plaintiff's manifest acceptance of the terms of the loan. (Id.).

In July 2010, Barclays transferred $540,000 to Plaintiff's capital account at Dewey pursuant to their loan agreement. (Studen Decl. Ex. 3, May 28, 2013, ECF No. 28). For approximately two years, Barclays received quarterly interest payments on the loan in accordance with the loan agreement. (Barclays Mem. Supp. Mot. Dismiss 7, ECF No. 27). In May 2012, Dewey filed for Bankruptcy. (Am. Compl. ¶ 32, ECF No. 7). Following Dewey's commencement of bankruptcy proceedings, Plaintiff became solely responsible for the loan. (Barclays Mem. Supp. Mot. Dismiss 7, ECF No. 27). Despite receiving a notice informing him that an interest payment was due in July 2012, Plaintiff failed to make the interest payment. (Id.).

In September 2012, Barclays served Plaintiff with notice that the loan was in default and demanded repayment of the principal plus all interest accrued to that date. (Studen Decl. Ex. 11, May 28, 2013, ECF No. 28). In December 2012, with the loan still outstanding, Barclays

2

commenced proceedings in an English court to recoup the full amount due under the loan agreement. (Studen Decl. Ex. 5, May 28, 2013, ECF No. 28).

Plaintiff, however, alleges that he never applied for such a loan from Barclays. Plaintiff has "no recollection of signing any such Letter Agreement . . . ." (Am. Compl. ¶ 32, ECF No. 7). "Plaintiff never received any funds from Barclays." (Am. Compl. ¶ 33, ECF No. 7). And Plaintiff never executed a promissory note for this loan with Barclays. (Am. Compl. ¶ 34, ECF No. 7). Consequently, Plaintiff believes that this letter agreement is a fabrication. (Am. Compl. ¶ 35, ECF No. 7). To vindicate his rights, Plaintiff commenced this action in February 2013 against Barclays and the former directors and officers of Dewey. (See generally Compl., ECF No. 1).

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) requires that a case be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional authority to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. The plaintiff may meet this burden by "alleg[ing] facts that affirmatively and plausibly suggest" that the court has subject matter jurisdiction over the case. Amidax Trading Grp. V. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). A court is not limited to the allegations in the complaint; it can consider evidence outside the pleadings. Makarova, 201 F.3d at 113; see also APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (citations omitted) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits.").

## III. Discussion

Plaintiff asserts that "[t]he Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334, because the case arises in or is related to Dewey & LeBoeuf's bankruptcy." (Am. Compl. ¶ 10, ECF No. 7). Defendants' contend that "the connection between [Plaintiff's] claims . . . and the Dewey bankruptcy proceeding . . . is too attenuated to permit the exercise of either 'arising in' or 'related to' bankruptcy jurisdiction . . . ." (Barclays Mem. Supp. Mot. Dismiss 11, ECF No. 27). Moreover, they urge that even if this Court were to find "arising in" or "related to" jurisdiction in this matter, it should abstain from exercising such jurisdiction pursuant to 28 U.S.C. § 1334(c)(1). (Id. at 14).

### A. The Court does not have "arising in" jurisdiction over this case.

"Arising in" jurisdiction "covers claims that 'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'" Baker v. Simpson, 613 F.3d 346, 350-51 (2d Cir. 2010) (per curiam) (alteration in original) (quoting In re Wood, 825 F.2d 90, 97 (5th Cir. 1987)). In Baker, a debtor brought a malpractice claim against counsel that the bankruptcy court had appointed to represent him in the Title 11 proceeding. Id. at 348. The Second Circuit concluded that "arising in" jurisdiction existed because the malpractice claim could not have existed in the absence of the Title 11 proceeding. Id. at 351.

Nevertheless, "[t]he mere fact that the cause of action would never have arisen absent this particular bankruptcy is not enough to confer jurisdiction." Winstar Holdings, LLC v. Blackstone Grp. L.P., No. 07-CV-4634, 2007 WL 4323003, at *4 (S.D.N.Y. Dec. 10, 2007). In Winstar, a buyer sued its financial advisor for fraudulent advice rendered in connection with the

4

purchase of assets in a bankruptcy auction. Id. at *1, *4. The court held that it had "arising in" jurisdiction over the suit because "the claims at issue here are . . . closely connected to the administration of the bankruptcy . . . ." Id. at *4. Key to this holding was that the buyer's claims went "directly to the proper performance of duties by professionals retained by the bankruptcy estate . . . to assist . . . in maximizing the assets of the estate." Id. at *5.

In contrast, Plaintiff's claims here could well exist outside of the Dewey bankruptcy. It is not difficult to envision a scenario in which Plaintiff's claims would stand even if Dewey were not in bankruptcy. Nor are Plaintiff's claims closely connected to the administration of the Dewey bankruptcy. Plaintiff asserts garden-variety contract and tort law claims against Defendants. At best, Plaintiff's claims can perhaps be traced back to the filing of the Dewey bankruptcy. But that does not provide a sufficient basis for asserting "arising in" jurisdiction. Therefore, this Court does not have "arising in" jurisdiction over Plaintiff's claims.

**B. The Court does not have "related to" jurisdiction over this case.**

Litigation is "related to" a bankruptcy proceeding if its "outcome might have any 'conceivable effect' on the bankrupt estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992)). "Conceivable effects" typically manifest themselves by altering "[t]he amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors . . . ." In re Kolinsky, 100 B.R. 695, 702 (S.D.N.Y. 1989). But "related to" jurisdiction is not limitless. Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995). Standing alone, "[o]verlap between the bankrupt's affairs and another dispute is insufficient . . . ." Home Ins. Co. v. Cooper & Cooper Ltd., 889 F.2d 746, 749 (7th Cir. 1989).

5

Moreover, "[a]ny contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995)).

Where the primary action is a "mere precursor" to a potential claim against the bankruptcy estate, "related to" jurisdiction does not exist. Pacor, 743 F.2d at 995. In Pacor, an employee brought a products liability action against his employer, who in turn pursued a third-party claim against an individual who was entitled to indemnification from the bankruptcy estate. Id. at 986-87. The court determined that "related to" jurisdiction did not exist because the bankruptcy estate would only be affected in turn. Id. at 994-95.

Undisputedly, the facts as alleged in Plaintiff's complaint do not neatly overlap with the factual scenario in Pacor. For instance, Plaintiff has sued both Barclays, who has no relation to the bankrupt estate, and the Individual Defendants, who, as former officers and directors of Dewey, may have an indemnification claim against the bankrupt estate. Nevertheless, Plaintiff's claims arise solely from an agreement between Plaintiff and Barclays. Plaintiff's claims against the Individual Defendants are ancillary to his claims against Barclays. Additionally, there is at least some dispute whether the Individual Defendants would be automatically entitled to indemnification from the Dewey estate. Such circumstances do not support the Court's exercise of "related to" jurisdiction.

### C. The Court will abstain from exercising bankruptcy jurisdiction over this case.

Even if this Court had "related to" jurisdiction, it would abstain from exercising it "in the

interest of justice, or in the interest of comity with State Courts or respect for State law . . . ." 28 U.S.C. § 1334(c)(1). Twelve factors guide a court's determination on whether to exercise discretionary abstention:

> (1) the effect or lack thereof on the efficient administration of the estate if a [c]ourt recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficult or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments entered in state court with enforcement left to bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

Allstate Ins. Co. v. CitiMortgage, Inc., No. 11 Civ. 1927 (RJS), 2012 WL 967582, at *6 (S.D.N.Y. Mar. 13, 2012) (citation omitted). The Court discusses the factors it finds most persuasive in turn.

### 1. Minimal Effect on the Efficient Administration of the Estate

The possibility of an indemnification claim against the bankruptcy estate does not necessarily affect the efficient administration of the bankruptcy estate. Power Plant Entm't Casino Resort Indiana, LLC v. Mangano, 484 B.R. 290, 299-300 (S.D.N.Y. 2012). "[I]t is not uncommon for a claim to be liquidated in state court and for indemnification rights, if any, to be dealt with in the context of the bankruptcy estate." Id. Consequently, this factor weighs in favor of abstention.

7

### 2. State Law Issues Predominate Over Bankruptcy Issues

Plaintiff asserts only state-law based contract and tort claims against both Barclays and the Individual Defendants. There are no federal or bankruptcy claims asserted in the complaint, and bankruptcy issues are only implicated, if at all, tangentially. Therefore this factor weighs in favor of abstention.

### 3. Presence of a Related Proceeding Commenced in English Court

Barclays commenced a proceeding to enforce its rights against Plaintiff in an English Court pursuant to their loan agreement some months before Plaintiff brought this suit. "While 28 U.S.C. § 1334(c)(1) refers to comity with 'state court' and with respect to 'state law,' several courts, including this Court, have extended 28 U.S.C. § 1334(c)(1) to foreign proceedings under the doctrine of international comity." In re CPW Acquisition Corp., No. 08-14623 (AJG), 2011 WL 830556, at *6 (Bankr. S.D.N.Y. Mar. 3 2011) (citations omitted). The parties here contracted for an English forum and the application of English law to any disputes regarding the loan. Pursuant to that agreement, a related proceeding was commenced in the English Court before Plaintiff initiated this suit. This factor weighs in favor of abstention.

### 4. No Jurisdictional Basis Other Than § 1334

Plaintiff's only asserted basis for jurisdiction is 28 U.S.C. § 1334. This factor weighs in favor of abstention.

### 5. Non-Core Proceeding

"Core" proceedings are those that "aris[e] under" or "aris[e] in" Title 11. Aqua Shield Inc. v. Brooks, Nos. 13-CV-3008 (SJF)(WDW) and 13-CV-3009 (SJF) (AKT), 2013 WL 5781234, at *2 (E.D.N.Y. Oct. 24, 2013). They "are directly related to a bankruptcy court's

8

central functions . . . and have no existence outside of bankruptcy." Id. In contrast, proceedings that are merely "related to" cases under Title 11 are considered "non-core" proceedings. Id. They are typically based in common law. Id.

Plaintiff's claims against Barclays and the Individual Defendants are rooted in common law. They neither "aris[e] under" nor "aris[e] in" Title 11, and can exist outside of Dewey's bankruptcy. This case is a non-core proceeding and that weighs in favor of abstention.

### 6. Forum Shopping by the Plaintiff

Plaintiff suggests that it is in fact Barclays who has engaged in forum-shopping. In the context of this suggestion, Plaintiff essentially admits his motive for seeking to file this suit—a more convenient forum for Plaintiff. Barclays filed its suit in an English Court pursuant to the loan agreement that Plaintiff signed. Plaintiff, on the other hand, filed this proceeding to decrease his costs and make it convenient for him to attend court proceedings. (Mem. Opp. Mot. Dismiss 14, ECF No. 30). This factor weighs in favor of abstention.

## IV. Conclusion

Defendants' Motions to Dismiss are GRANTED. (ECF Nos. 45-47, 49-50). The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 3, 2014
New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge

9